**CASE NO. 24-3388**

# United States Court of Appeals
## for the
## Sixth Circuit

**John Noakes**

*Plaintiff-Appellant*

v.

**University of Cincinnati, et al**

*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
Civil Action No. 1:23-cv-00284-MRB
Honorable Michael R. Barrett, United States District Judge, presiding

**REPLY BRIEF OF APPELLANT JOHN NOAKES**

/s/ Joshua Adam Engel
Joshua Adam Engel (OH 0075769)
ENGEL & MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

**CORPORATE DISCLOSURE**

Appellant is not a subsidiary or affiliate of a publicly owned corporation.   There is no publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE ............................................................ii

SUMMARY OF ARGUMENT .........................................................1

ARGUMENT ....................................................................................3

    A.   The Eleventh Amendment Does Not Bar The Prospective Relief
        Sought By Noakes ...................................................................3

    B.   Noakes Has A Substantial Likelihood Of Success On The Merits
        Because UC Failed To Provide Noakes With The Constitutionally
        Required Fundamentally Fair Disciplinary Process ...........................6

        1.   UC Failed To Provide Noakes With Sufficient Notice...........................6

            a.   The Initial Notice Was Too Vague To Permit Noakes A
                Meaningful Opportunity To Prepare For An
                Investigation ..............................................................6

            b.   Noakes Faced A Moving Target ........................................12

        2.   The Hearing Panel Relied Upon Undisclosed And Unreliable
            Expert Evidence.............................................................14

            a.   The Use Of The BAC Calculator Violated This Court's
                Requirement That Evidence Be Disclosed .....................................14

            b.   The Use Of The BAC Calculator Violated This Court's
                Requirement That Evidence Relied Upon At An
                Administrative Hearing Must Be Reliable ......................................16

        3.   The Entire Process, Including Investigation And Hearing,
            Was Fundamentally Unfair ...............................................17

            a.   The Delays In This Case Prejudiced Noakes.................................17

            b.   Noakes Was Denied Access To Crucial Evidence That
                Would Have Permitted Effective Cross-Examination ..................18

            c.   The Perplexing Decision Permits An Inference Of Bias..............20

            d.   The Multiple Procedural Errors Permit An Inference Of
                Bias And Created A Fundamentally Unfair Process......................20

            e.   The Consultants Used On The Hearing And Appeals
                Panels Were Biased ..........................................................21

C.   Noakes Will Suffer Irreparable Harm In The Absence Of Injunctive Relief ....................................................................22

D.   The Balance Of The Equities, Public Interest, And Minimal Harm To Third Parties Support The Issuance Of An Injunction............................23

E.   Nominal Bond Should Be Required ..................................................24

CONCLUSION .....................................................................................24

CERTIFICATE OF COMPLIANCE...................................................25

CERTIFICATE OF SERVICE.............................................................25

## TABLE OF AUTHORITIES

### Cases

*Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656 (6th Cir.1982) .......................5

*Anti-Fascist Committee v. McGrath,* 341 U.S. 123 (1951) ...............................7

*Bd. of Curators of Univ. of Missouri v. Horowitz,* 435 U.S. 78 (1978)....................23

*Cabaniss v. City of Riverside*, 231 F.App'x 407 (6th Cir. 2007) ............................17

*Damon's Restaurants, Inc. v. Eileen K, Inc.*, 461 F. Supp. 2d 607 (S.D. Ohio, 2006) ....................................................................17

*Dietchweiler v. Lucas*, 827 F.3d 622 (7th Cir. 2016) .......................................13

*Dixon v. Regents of the Univ. of New Mexico*, D.N.M. No. CV 98-725 SC/DJS, 1999 U.S. Dist. LEXIS 25356 (July 23, 1999) .................................23

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) ........................................ 1, 19

*Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561 (D.Mass. 2016) .........................11

*Doe v. Citadel*, D.S.C. No. 2:21-cv-04198-DCN, 2022 U.S. Dist. LEXIS 127707 (July 18, 2022).........................................................6

*Doe v. Dewine*, 910 F.3d 842 (6th Cir. 2018) ..........................................5

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018) .........................................*passim*

*Doe v. Oberlin College*, 963 F.3d 580, 586 (6th Cir. 2020)......................2, 18, 20

*Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645 (S.D.Ohio 2016) ..........................4

*Doe v. Purdue Univ.,* 928 F.3d 652 (7th Cir. 2019)..............................16, 20

*Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602 (E.D.Va. 2016) .......................................................................12

*Doe v. Siena College,* N.D.N.Y. No. 1:22-cv-1115, 2023 U.S. Dist. LEXIS 7325 (Jan. 17, 2023)........................................................22

*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017).......................................1

*Doe v. Univ. of Cincinnati,* S.D.Ohio No. 1:16-c-v987, 2018 U.S. Dist. LEXIS 51833 (Mar. 28, 2018) ....................................................4

*Doe v. Univ. of Notre Dame*, N.D.Ind. No. 3:17CV298, 2017 U.S. Dist. LEXIS 69645 (May 8, 2017) .........................................................11

*Doe v. Wright State Univ.*, S.D.Ohio No. 3:16-cv-469, 2017 U.S. Dist. LEXIS 136225 (Aug. 24, 2017) ..................................................................................4

*Durham v. McWhorter*, 789 F. App'x 533 (6th Cir. 2020) ........................................5

*Endres v. Northeast Ohio Med. Univ.*, 938 F.3d 281 (6th Cir. 2019) ..............................*passim*

*Ex Parte Young*, 209 U.S. 123 (1908) ..............................................................4

*Flaim v. Med. Coll. of Ohio,* 418 F.3d 629 (6th Cir. 2005) ...............................*passim*

*Goldberg v. Kelly,* 397 U.S. 254 (1970) ...........................................................16

*Goss v. Lopez,* 419 U.S. 565, 580 (1975) ..........................................................7, 8

*Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 473 (5th Cir. 2020) ...............................................................................................3

*Greene v. McElroy*, 360 U.S. 474, 496-497 (1959) ...............................................16

*Hall v. Trump*, M.D.Tenn. No. 3:19-cv-00628, 2020 U.S. Dist. LEXIS 38349 (Mar. 5, 2020) ...............................................................................5

*Hedrick v. W. Michigan Univ.*, W.D.Mich. No. 1:22-cv-308, 2022 U.S. Dist. LEXIS 189225 (Oct. 17, 2022) ...........................................................4

*Marshall v. Ohio Univ.*, S.D.Ohio No. 2:15-cv-775, 2015 U.S. Dist. LEXIS 31272 (Mar. 13, 2015). .............................................................................22

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) ...............................................17

*Murakowski v. Univ. of Delaware*, 575 F.Supp.2d 571 (D.Del. 2008) ...........................8

*Nguyen v. Univ. of Louisville*, W.D.Ky. No. 3:04CV-457, 2006 U.S. Dist. LEXIS 20082 (Apr. 14, 2006) ..............................................................8

*Obama for Am. v. Husted,* 697 F.3d 423 (6th Cir. 2012) .........................................22

*Ohio Bell Tel. Co. v. PUC*, 301 U.S. 292 (1937) ...................................................16

*Pappas v. James Madison Univ.,* W.D.Va. Civil Action No. 5:22-cv-00028, 2023 U.S. Dist. LEXIS 56550 (Mar. 31, 2023) ............................................6

*Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623 (6th Cir. 2013) ......................5

*VanNahmen v. Dodge City Community College*, D.Kan. No. 17-CV-1174-EFM, 2018 U.S. Dist. LEXIS 132451 (Aug. 7, 2018) ...........................................11

*Williams v. Sonnentag*, D.Colo. Civil Action No. 1:21-cv-02757, 2021 U.S. Dist. LEXIS 216799 (Nov. 9, 2021) ..................................................22

**Other Authorities**

34 C.F.R. 106.45 .............................................................................................. 7, 10

Fed. R. Evid. 401 ...............................................................................................15

Merriam-Webster.com Dictionary ......................................................................15

**SUMMARY OF ARGUMENT**

The controlling cases are: *Flaim v. Med. Coll. of Ohio,* 418 F.3d 629 (6th Cir. 2005); *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017); *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018); *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018); and *Endres v. Northeast Ohio Med. Univ.*, 938 F.3d 281 (6th Cir. 2019). The common thread in these cases is this Court's recognition of the significance of a student's interests in continuing education and the often minimal burden that universities would bear by providing adequate due process protections. This Court has not hesitated to rigorously examine the procedures used by state universities to assure that disciplinary decisions – which have profound impacts on students' lives – remain fundamentally fair.

At every instance in this case, UC chose to make it more difficult for Noakes to defend himself. As this Court noted in a prior case assessing UC's procedures, UC, through insufficient procedures, "risk[ed] removing the wrong students, while overlooking those it should be removing." *Univ. of Cincinnati*, 872 F.3d at 403. Now, UC, in its Brief, again seeks to stretch this Court's due process jurisprudence beyond the breaking point to defend a fundamentally unfair process.

UC seeks to limit this Court's notice-related holding in *Flaim* by asserting that a university is obligated only to provide a student notice of the charges with a bare-bones reference to the school's policy. But in *Flaim* this Court required more, holding that the notice provided by the school must contain not only the "specific charges," but also

the "grounds which, if proven, would justify expulsion." 418 F.3d at 638. UC then asserts that Noakes should have been aware of the nature of the allegations he faced after receiving an investigative report, but Noakes did not have the meaningful opportunity prepare a defense against the particular theory of incapacitation that the hearing panel – despite his accuser's disavowal of the theory – eventually adopted.

UC seeks to limit this Court's disclosure-related holdings in *Miami Univ.* and other cases by inventing a distinction between "evidence" and "educational tools." But this Court and the Supreme Court have made no such distinction and have been clear that decision makers may not "use" information – for whatever purpose – that has not been disclosed. *Miami Univ.*, 882 F.3d at 603. This is doubly problematic where the information, like the BAC calculator in this case, is inherently unreliable.

Finally, the record in this case reveals a series of errors in UC's response to the allegations of sexual misconduct which, consistent with *Doe v. Oberlin College*, 963 F.3d 580, 586 (6th Cir. 2020), permit a plausible inference of bias. Among other errors, UC: failed to act diligently; permitted Roe to present misleading medical testimony without requiring the production of records; denied Noakes the ability to cross-examine Roe on issues affecting her credibility; and used biased decision makers.

Noakes, thus, has demonstrated a substantial likelihood of success on the merits. The remaining preliminary injunction factors favor the granting of a preliminary injunction for the reasons this Court articulated when upholding a preliminary injunction in *Univ. of Cincinnati.*

## ARGUMENT

### A.    The Eleventh Amendment Does Not Bar The Prospective Relief Sought By Noakes

Noakes' claims are not barred by the Eleventh Amendment because he seeks essentially the same type of prospective relief approved by this Court in *Doe v. Cummins,* 662 Fed. Appx. 437 (6th Cir. 2016), and *Univ. of Cincinnati*: an injunction vacating any disciplinary findings, compelling Defendants to remove any negative notation in his disciplinary records, and prohibiting the reporting of discipline.  (*See* Complaint, R.1, PageID#64.)  In *Cummins,*  this Court rejected the exact same argument made by UC here:

> If successful, this claim would not require the court to grant any retroactive or compensatory remedy. Rather, the individual defendants would merely be compelled to remove the negative notation from [the students'] disciplinary records that resulted from the allegedly unconstitutional disciplinary process. This is nothing more than prospective remedial action.

662 F.App'x at 444.[1]  *Compare* Appellee Br. at 50-51.  Since *Cummins*, district courts in this Circuit have held that an injunction seeking to prevent the imposition of

---

[1] UC seeks to distinguish *Cummins* by suggesting that a due process claim for injunctive relief survives scrutiny under the Eleventh Amendment only if the Complaint unequivocally does not request *any* relief that could be characterized as retroactive or compensatory.  Appellee Br. at 51.  Nothing in *Cummins* or any of this Court's other Eleventh Amendment cases suggest that if some of the relief sought is determined to be unavailable, it necessarily follows that the Eleventh Amendment bars the *entire* suit. *Cf. Green Valley Special Util. Dist. v. City of Schertz,* 969 F.3d 460, 473 (5th Cir. 2020) ("Because at least one form of prospective relief is possibly available to [plaintiff], its claims… are not barred by the Eleventh Amendment.").

disciplinary sanctions by a school is prospective relief not barred by the Eleventh Amendment.[2] *Doe v. Univ. of Cincinnati,* S.D.Ohio No. 1:16-c-v987, 2018 U.S. Dist. LEXIS 51833 at *4 (Mar. 28, 2018) ("The Sixth Circuit has held that a request that individual defendants sued in their official capacity be enjoined from reporting any disciplinary actions taken by the university would not require the court to grant any retroactive or compensatory remedy."); *Doe v. Wright State Univ.*, S.D.Ohio No. 3:16-cv-469, 2017 U.S. Dist. LEXIS 136225, at *17 (Aug. 24, 2017) ("to the extent [the student] is seeking to prevent [a school] from reporting, through disclosures of his transcript and student record, that he was expelled for disciplinary reasons, such relief is constitutionally permissible"); *Hedrick v. W. Michigan Univ.*, W.D.Mich. No. 1:22-cv-308, 2022 U.S. Dist. LEXIS 189225, at *29 (Oct. 17, 2022) ("declaratory and prospective injunctive relief, including… expungement of any reference to [a student's] expulsion" is "not barred by the Eleventh Amendment").

UC also argues that relief is unavailable because the Individual Defendants named in the Complaint may not "be responsible for the conduct of which [Noakes] complains" and that seeking relief from those alleged to be "responsible for 'implementing' university policy falls far short of the mark." Appellee Br. at 52. This argument fails because *ex parte Young,* 209 U.S. 123 (1908), allows for claims seeking

---

[2] *See also* Appellant's Brief at 21 (collecting circuit court cases). UC primarily relies on *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645 (S.D.Ohio 2016), but this case was decided a month before *Cummins*.

prospective relief against state officials who have "some connection" to the ongoing federal violation. *Durham v. McWhorter*, 789 F. App'x 533, 534 (6th Cir. 2020). The "some connection" standard, when it comes to state officials sued for injunctive relief, is satisfied by showing that the official has "responsibility for" the unconstitutional practice so that they can be ordered to provide the requested relief.[3]  *Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013).  *See also Doe v. Dewine*, 910 F.3d 842, 849 (6th Cir. 2018) (defendants were "actively involved with administering" the challenged laws); *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 fn.5 (6th Cir.1982) (*ex parte Young* requires only "that the state officer sued have 'some connection" with the enforcement of the allegedly unconstitutional" policy).  In this case, the Individual Defendants have "some connection" to that alleged violation because they are the officials who have the "responsibility for implementing the various

---

[3] In a suit for money damages against a state official sued in his or her individual capacity, the plaintiff must allege that the defendant was personally involved in the actions constituting a violation of the plaintiff's constitutional rights; but in a suit for injunctive relief, the focus is on whether the state official sued in his or her official capacity can provide the relief requested.  *See Taaffe v. Drake*, S.D.Ohio No. 2:15-CV-2870, 2016 U.S. Dist. LEXIS 57397, at *16 (Apr. 29, 2016) ("when only prospective injunctive relief is requested… [t]he proper defendants in such an action are the ones who have the power to provide the relief sought, whether or not they were involved in the allegedly illegal conduct at issue"); *Hall v. Trump*, M.D.Tenn. No. 3:19-cv-00628, 2020 U.S. Dist. LEXIS 38349, at *13 (Mar. 5, 2020) ("courts are perfectly clear that the [personally involved] standard applies only to individual-capacity claims").

policies and procedures UC has adopted related to student conduct and the enforcement of Title IX." (Complaint, R.1, PageID#3-4.) [4]

## B. Noakes Has A Substantial Likelihood Of Success On The Merits Because UC Failed To Provide Noakes With The Constitutionally Required Fundamentally Fair Disciplinary Process[5]

### 1. UC Failed To Provide Noakes With Sufficient Notice

#### a. The Initial Notice Was Too Vague To Permit Noakes A Meaningful Opportunity To Prepare For An Investigation

The initial notice received by Noakes was not sufficient because it failed to include the grounds for the alleged misconduct or inform Noakes exactly how he was alleged to have engaged in misconduct. The notice, thus, failed to provide Noakes with "a meaningful opportunity to prepare for" all critical stages of the disciplinary process. *Flaim*, 418 F.3d at 638.

UC seeks to limit the holding of *Flaim* by asserting that "a university is obligated to provide a student 'notice of the charges.'" Appellee Br. at 32, *citing Flaim.* True enough; but *Flaim* went further. In *Flaim,* this Court held that the notice provided by the school must contain not only the "specific charges" but the "grounds which, if

---

[4] At a minimum, the Title IX Coordinator is a proper defendant. *Doe v. Citadel*, D.S.C. No. 2:21-cv-04198-DCN, 2022 U.S. Dist. LEXIS 127707, at *13-16 (July 18, 2022) (injunctive relief, including expungement of a disciplinary record, was property directed at a school's Title IX coordinator); *Pappas v. James Madison Univ.,* W.D.Va. Civil Action No. 5:22-cv-00028, 2023 U.S. Dist. LEXIS 56550, at *54 (Mar. 31, 2023) (Title IX coordinator was appropriate school official because of "oversight over" the university's Title IX policy).

[5] UC does not contest that the Due Process Clause is implicated by higher education disciplinary decisions.

proven, would justify expulsion." 418 F.3d at 638. This is consistent with the Supreme Court's observation in *Goss* that "effective notice" is required and that "'Secrecy is not congenial to truth-seeking…'" *Goss v. Lopez,* 419 U.S. 565, 580 (1975), *quoting Anti-Fascist Committee v. McGrath,* 341 U.S. 123, 168-169 (1951) (Frankfurter, J., concurring). *Cf.* 34 C.F.R. 106.45(b)(2)(i)(B) (requiring that a university give a respondent "details known at the time").

Context is critical here. After receiving the initial notice, Noakes was expected to meet with the investigator and provide supporting witnesses and evidence for inclusion in a report that will be provided to the hearing panel. This is, as UC's 30(b)(6) deponent acknowledged, a critical stage of the process:

> Q …And the people involved in the adjudication process, they rely on that investigation?
> A They rely on that report.
> Q Okay. In other words -- I mean this isn't a trick question; right? In other words, the information that is gathered in the investigation is a pretty important part of your process?
> A It is, yes.

(Shaw Depo., R.30, PageID#991.)[6] Noakes understood the importance of the investigation; he responded to the initial notice by asking for more information: "So

---

[6] *Flaim* states that a student must have a "meaningful opportunity to prepare *for the hearing.*" 418 F.3d at 638 (emphasis supplied). This use of the term "for the hearing" does not cabin the holding. Participation in the investigation, whether through providing a statement, identifying witnesses and evidence, or otherwise, is necessary for the student to put forward a proper defense at the hearing. The limited role of the investigator under the UC system makes sufficient pre-investigation notice even more

that I can gather any evidence and provide you with appropriate witnesses, please provide me with more details of the nature of the allegations being made…" (Email, R.29-14, PageID#978.)  The federal regulations also understand this reality, which is why they require that a student be provided with "sufficient details known at the time… to prepare a response *before any initial interview*." 34 C.F.R. 106.45(b)(2)(i)(B) (emphasis supplied).

In the context of this case, *Goss*, *Flaim*, and subsequent decisions may be understood as preventing a school from withholding information in its possession that will permit a student the meaningful opportunity to prepare for a critical stage of the disciplinary process.[7]  There is no question that Noakes was not specifically informed, prior to the investigation, that Roe was alleging an inability to consent due to incapacitation.  (30(b)(6) Depo., R.30, PageID#988.)  UC responds that notice of an

---

necessary. The investigator makes no effort to independently obtain evidence beyond what is voluntarily provided by the parties.  (Shaw Depo. R.31 PageID#1180.)

[7] Noakes is not suggesting that this Court impose a rigid requirement of meticulously detailed notice at the outset of a disciplinary proceeding. UC could, for example, satisfy this standard by providing, when requested, a copy of the formal complaint.  This is the practice of other state institutions in Ohio.  Miami University, for example, provides a copy of the complaint form to accused students along with the initial notice.  *See* Miami University Sexual Misconduct Protocol for Students, § XI(B) (https://miamioh.edu/policy-library/students/undergraduate/health-safety/title-ix-protocol-sexual-misconduct-policy-procedures-for-students.html).  *Cf. Murakowski v. Univ. of Delaware*, 575 F.Supp.2d 571, 586 (D.Del. 2008) (notice was sufficient where student "received a copy of the charges against him, including letters… explaining the factual bases for those charges"); *Nguyen v. Univ. of Louisville*, W.D.Ky. No. 3:04CV-457, 2006 U.S. Dist. LEXIS 20082, at *18 (Apr. 14, 2006) (school complied with *Flaim* by including in initial notice "a detailed list of the factual allegations against" the student).

8

inability to consent due to incapacitation is inferred – that simply referring to the policy was sufficient to provide Noakes with notice that incapacitation was the grounds for the allegation.   Appellee Br. at 19-20.   UC believes that Noakes should have been able to parse through the complicated definition of consent contained in the UC policy without any hint at which of the myriad ways his sexual encounter with Roe was alleged to be non-consensual.  This belief is not realistic and UC provides no supporting cases. In defining sexual misconduct and consent, the Title IX Policy draws multiple nuanced distinctions that may be difficult for a college student, not trained in the law, to understand and apply.[8]   Noakes' advisor, an experienced former prosecutor, testified that the initial notice was insufficient even for him.   (O'Reilly Depo., R.33, PageID#1557-1559.)

UC does not contest that the school easily could have provided Noakes with a copy of the complaint when he asked for more information.   Appellee Br. at 20. Instead, UC, in analyzing this decision under *Mathews*, defends its decision to keep the

---

[8] UC suggests that Noakes was aware that incapacitation was at issue because he allegedly used the term "incapacitation" during his meeting with the investigator. Appellee Br. at 22.  Noakes contested the accuracy of this statement and there are no contemporaneous notes or recordings.  (Email, R.32-4, PageID#1505.)   Regardless, Noakes' statement should be understood as a general denial that he engaged in any form of misconduct.   The fact that Noakes mentioned incapacitation should be interpreted as an effort to anticipate a potential moving target, as his email to the investigator makes clear: "I am unclear on whether I am accused on engaging of sexual activity [sic] through the use of force or coercion or because the complainant was unable to provide consent because of intoxication, or otherwise."  (Email, R.32-3, PageID#1502.)

complaint confidential by asserting that there were "significant potential costs of providing extensive detailed information at the early stages of a disciplinary proceeding." *Id.* UC cites deposition testimony from the 30(b)(6) witness. (30(b)(6) Depo., R.30, PageID#989.) A close examination of this testimony, in context, reveals the illusory nature of these claims.

- First, the 30(b)(6) witnessed claimed that the allegation "hasn't been investigated." That merely re-states the obvious without explaining a government interest. The investigator undercut this claim by testifying that the investigation would not have been harmed if UC had provided Noakes with this information. (Shaw Depo., R.30, PageID#989.) The 30(b)(6) witness reluctantly admitted that nothing in the Title IX policy prohibited disclosure of the complaint. (30(b)(6) Depo., R.30, PageID#992.)

- Second, the 30(b)(6) witness claimed that providing more detailed information would have permitted Noakes to "tailor" his response to the actual allegations. The witness never explains why this is a government interest; it would seem the school has an interest in obtaining only relevant information that responds to the substance of the actual allegation instead of a vague narrative which may disclose sexual predispositions or prior sexual behavior in violation of regulations. *See* 34 C.F.R. 106.45(b)(1)(iii).

- Third and Fourth, the 30(b)(6) witness claimed that other students could have been identified in the complaint or that there could be a risk of retaliation. Even if this describes a legitimate, although generalized, interest, the 30(b)(6) witness acknowledged that the formal complaint is provided to students at the end of the investigation, anyway. She could not testify that the potential for the disclosure of confidential information or retaliation was any less at the end of the investigation. (30(b)(6) Depo., R.30, PageID#989.)

UC provides no authority to support its claim that a notice which merely references a policy is adequate. Nor does UC provide authority that a school may withhold information in its possession that provides the grounds for the alleged misconduct. *Compare* Appellant Br. at 28-29.[9] *See also Doe v. Rector & Visitors of George*

---

[9] UC's attempts to distinguish the cases cited by Noakes are unavailing. Appellee Br. at 26-27. Every case presents a unique context, but they have in common that simply referring to a policy is insufficient. In *VanNahmen v. Dodge City Community College*, D.Kan. No. 17-CV-1174-EFM, 2018 U.S. Dist. LEXIS 132451, at *11 (Aug. 7, 2018), due process was violated when the school declined, as in this case, the student's request that he be provided "specific notice of the conduct that he must defend against." In *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 603 (D.Mass. 2016), the court was concerned not that the student did not know the exact day of the allegation, but that there was an inherent unfairness to an investigation "where one party is fully informed of the subject matter of the inquiry and the other remains ignorant, and has to surmise the specifics of the charges over the course of the investigation." And in *Doe v. Univ. of Notre Dame*, N.D.Ind. No. 3:17CV298, 2017 U.S. Dist. LEXIS 69645 (May 8, 2017), the outcome would not, as UC suggests, have been different had the student received extra time to prepare for the hearing. Instead, this was an additional factor after the court expressed

*Mason Univ.*, 149 F. Supp. 3d 602, 616 (E.D.Va. 2016) (notice that "provided no specifics as to the alleged factual basis of the charges" was deficient because an "opaque notice can hardly be said to give [the student] a clear indication of the specific nature of the charge.").

### b.    Noakes Faced A Moving Target

The investigation and hearing focused on whether Roe had been drugged and not on whether she was intoxicated.   UC claims that Noakes constructs a "false dichotomy… between alcohol incapacitation and drug incapacitation."  UC's arguments essentially come down to one idea:  "[i]ncapacitation is incapacitation."  Appellee Br. at 24.  UC cites no direct support for this assertion.  Instead, UC cherry-picks the record to find instances where Roe and others stated she "had engaged in alcohol consumption" in an effort to infer that, as a result, Noakes was "on notice that Roe's alcohol consumption would be an issue at the hearing."  Appellee Br. at 24-25.  The problems here should be obvious: (i) simply consuming alcohol does not make one intoxicated, much less incapacitated; and (ii) Roe explicitly and repeatedly stated that she did not have too much to drink.   (Policy, R.1-3, PageID#105 ("Incapacitation is more than intoxication"); Appellant Br. at 31 (collecting citations).)

---

its view that "general language parroting the laundry list of offenses" in the policies prior to the investigation was insufficient.

Noakes did not have the meaningful opportunity described in *Flaim* to prepare to defend against that particular theory of incapacitation.[10] UC suggests that "Noakes's defense… was the same regardless of the manner in which Roe may have become incapacitated." But this is not true. Noakes' advisor, an experienced former sex-crimes prosecutor (Affidavit, R.3-2, PageID#211) explained that they went into the hearing believing that the allegation was incapacity due to drugs, not alcohol. (O'Reilly Depo. R.33, PageID#1574.)[11] He testified that he would prepare for a case differently if the allegation were incapacitation due to drugs versus due to alcohol, adding that there "are different types of evidence that you can get based upon both…" (O'Reilly Depo. R.33, PageID#1575.)

---

[10] UC's efforts to distinguish *Dietchweiler v. Lucas*, 827 F.3d 622 (7th Cir. 2016), fail to take into account that incapacitation due to drugs and alcohol are different allegations requiring a different defense. Appellee Br. at 27. This decision focused not on a technical reading of a policy, but on whether the changing substance of the hearing had hampered the student's ability to fairly present his defense.

[11] UC claims Noakes's advisor "acknowledged" during his deposition that there is no difference whether incapacitation "occurs as a result of drugs or alcohol." Appellee Br. at 24, *citing* (O'Reilly Depo. R.33, PageID#1575.) However, UC takes that quote out of context. Noakes' advisor had indicated in response to a previous question said that the incapacitation in the case "appears to be pursuant to drugs."

2.    **The Hearing Panel Relied Upon Undisclosed And Unreliable Expert Evidence**

a.    **The Use Of The BAC Calculator Violated This Court's Requirement That Evidence Be Disclosed**

In *Miami Univ.* and *Endres* this Court held that that the Fourteenth Amendment requires that evidence used by a school's decision makers to adjudicate the claims against a student be provided to the student.  UC does not contest that these are the controlling precedents.  Appellee Br. at 29.  It is hard to imagine a case where the record and this Court's holdings line up more precisely:

| Holding | Deposition of Chair |
|---|---|
| The Constitution does require… that the student be provided the evidence against him.<br>*Miami Univ.*, 882 F.3d at 603 (citation omitted) | Q Just to be clear you didn't tell any of the parties you were going to refer to this calculator before you wrote this report; did you?<br>A No.<br>(Vincent Depo. R.29, PageID#522) |
| [T]he university must "provide the accused with the opportunity to 'respond, explain, and defend." …<br>*Endres*, 938 F.3d at 301. | Q Was he given any opportunity to respond to the information you received from this website before you used it?<br>A No<br>(Vincent Depo. R.29, PageID#523) |

UC tries to avoid the holdings *Miami Univ.* and *Endres* by suggesting the BAC calculator was not "evidence" relied upon by the hearing panel, but merely an

"educational tool."[12]  Appellee Br. at 29.  The most notable thing about UC Brief is that it cites no case which has drawn such a distinction.

The Supreme Court and this Court have adopted a simple rule: everything relied upon by the decision maker must be disclosed.  The reason for disclosure – permitting the party against whom evidence is offered the opportunity to rebut the evidence – has never turned on how the information is characterized.  Instead, the cases always speak merely of "use."  In *Goldberg v. Kelly,* 397 U.S. 254 (1970), the Supreme Court, in reviewing "pertinent" due process principles, said, "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."  397 U.S. at 270, *quoting Greene v. McElroy*, 360 U.S. 474, 496-497 (1959).  The Court added that "the decision maker's conclusion… must rest solely on the legal rules and evidence adduced

---

[12] Adopting UC's distinction, the BAC calculator would still be considered "evidence" because it was information considered to make the existence of a fact more or less probable. *Cf.* Fed. R. Evid. 401. The chair of the hearing panel repeatedly made the claim that the BAC calculator "validated" the testimony of Roe.  (Vincent Depo. R.29, PageID#522, 525.)  The term "validate" means "to support or corroborate on a sound or authoritative basis."  Merriam-Webster.com Dictionary (https://www.merriam-webster.com/dictionary/validate).  The term "validates" in this context, thus, means that the BAC calculator was used to support of corroborate the credibility of Roe.  Even if the BAC calculator was not viewed by the chair of the panel as direct evidence that Roe was incapacitated, the hearing panel considered the BAC calculator in deciding whether or not Roe was intoxicated and in evaluating the believability of witness testimony.

at the hearing." 397 U.S. at 271, *citing Ohio Bell Tel. Co. v. PUC*, 301 U.S. 292 (1937).  In

*Miami Univ.*, this Court similarly held that a due-process violation occurs when

undisclosed evidence is "used" by the decision maker.  882 F.3d at 603.

The hearing panel in this case used the BAC calculator in almost the same way

that the *Endres* and *Purdue* courts said was improper.  The undisclosed evidence in *Endres*

could, under UC's interpretation, also have been described as "validating."  The

undisclosed statistical evidence in *Endres* was used to support the conclusion to

disbelieve the student's denial about cheating – in other words, the statistical analysis in

*Endres* "validated" the conclusion regarding the student's cheating.  938 F.3d at 286.

*Compare* Appellee Br. at 30.  Similarly, in *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir.

2019), a committee concluded that the complainant was the more credible witness than

the student accused of sexual misconduct in a "he said/she said" matter.  The Seventh

Circuit found a due process violation because the decision maker had relied on

undisclosed evidence in making a credibility determination.  928 F.3d at 658.

> **b.    The Use Of The BAC Calculator Violated This Court's Requirement That Evidence Relied Upon At An Administrative Hearing Must Be Reliable**

UC does not contest that evidence used to support an administrative decision

must be reliable and of proven probative value.  Nor does UC point to any evidence in

the record that the BAC Calculator was reliable.  UC merely claims that the expert

forensic toxicologist failed to consider the testimony of witnesses.  Appellee Br. at 30-

31.  Regardless of whether this is a relevant consideration, it is not accurate.  The

forensic toxicologist reviewed the conclusions of the hearing panel, including the descriptions of witness testimony.  (Plotnick Aff., R.3-1, PageID#208.)[13]

### 3.    The Entire Process, Including Investigation And Hearing, Was Fundamentally Unfair

#### a.    The Delays In This Case Prejudiced Noakes

UC claims that it complied with the 90 business-day timeline in the Title IX Policy.  This is not accurate.  The relevant timeline is here that the hearing panel decision was issued 245 business days after the initial notice and 164 business days from the formal complaint (141 business days if the continuance requested by Noakes due to his advisor's cancer treatments is excluded).  UC seeks to avoid this by claiming that the investigator extended the timeline.  Appellee Br. at 44-45.  But, at most, she extended the time for the "investigation," by only four business days.[14]   And even this brief

---

[13] UC alludes to an argument that the affidavit of the forensic toxicologist is inadmissible.  Appellee Br. at 31, fn. 8.  UC makes no attempt to develop this argument and it should be considered to be waived.  *Cabaniss v. City of Riverside*, 231 F.App'x 407, 411 (6th Cir. 2007) ("where an argument is presented in a perfunctory and cursory manner, it is considered waived and we may not address it"), *citing McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997).  Regardless, UC cites rules intended for trial and trial preparation; district courts within this Circuit have not required stringent adherence to rules of evidence when reviewing motions for preliminary injunctions.  *See Damon's Restaurants, Inc. v. Eileen K, Inc.*, 461 F. Supp. 2d 607, 620 (S.D. Ohio, 2006) (collecting cases).

[14] The email extending deadlines was November 4, 2022.  The extension ended when preliminary investigative report was completed on November 10, 2022.  (Shaw Depo., R.31, PageID#1202.)

extension was not really for "good cause" since the investigator took no further investigative actions after this date.  (Shaw Depo., R.31, PageID#1201.)

UC further claims that this delay was not prejudicial, but the real question is whether the delay resulted in a process that was fundamentally unfair.  Appellee Br. at 33-34.  UC's own Appeals Panel suggested otherwise, noting that because of the long delay – regardless of fault -- in this case, "memories were already affected and surveillance tapes were certainly long overwritten."  (Decision, R.1-6, PageID#161.) UC's own policy also suggests otherwise, noting that "Delayed reporting or filing of a formal complaint may limit the University's ability to gather relevant evidence…" (Policy, R.1-3, PageID#113.)[15]  Finally, even if this type of troubling delay does not rise to an independent due process violation, this Court has held that this type of failure to comply with policies may provide support for a claim of bias. *Oberlin*, 963 F.3d at 587.

### b.     Noakes Was Denied Access To Crucial Evidence That Would Have Permitted Effective Cross-Examination

UC argues that "nothing in the record" suggests that Roe had a motive to lie in order to obtain supportive measures.[16]  Appellee Br. at 36.  But Roe was provided with

---

[15] UC alleges that Noakes was aware of Roe's allegations to a fraternity shortly after the incident.  Appellee Br. at 33. However, Noakes was not informed that Roe was alleging incapacitation.    (Pl. Depo. R.32, PageID#1398.)  Roe told the fraternity, "I know my limits very well and I was not too drunk."  (Statement, R.32-2, PageID#1500.)

[16] The Investigator made no inquiries about this despite a request to obtain this information.  (Email, R.31-17, PageID#1388.)

supportive measures, including accommodations related to her academic standing. (Shaw Depo. R.31, PageID#1188.)   The problem with UC's argument is that the hearing panel was denied access to this information in order to make that determination; without cross-examination this remains an unknown. *Cf. Baum*, 903 F.3d at 583 (cross-examination is necessary to test for "potential ulterior motives").

UC does not contest that Roe was permitted to testify about the results of a medical exam and present selected photographs without providing her records.   UC, instead, suggests that Noakes' argument that he needed those records for impeachment is "nonsensical" because Roe admitted the records showed no drugs in her system. Appellee Br. at 37.   UC takes too narrow a view on their potential usefulness.   A forensic pathologist provided an expert opinion that her testimony was not only "misleading" but that the medical records "are likely to provide highly relevant evidence that is necessary for [Noakes] to prepare an adequate defense."    (Plotnick Aff., R.3-1, PageID#210.)   Noakes advisor, based on his experience as a sex crimes prosecutor, believed that the medical records may have indicated "a certain blood alcohol level" or shown a lack of bruising.   (O'Reilly Depo., R.33, PageID#1569-1570.)   He further testified that records "would be very helpful to test her credibility."   (*Id.*)

19

### c.      The Perplexing Decision Permits An Inference Of Bias[17]

UC never explains *why* this Court's conclusion in *Oberlin* that a hearing panel's reasoning, on its face, may be inexplicable except by reason of bias should be limited to gender bias in Title IX cases. 963 F.3d at 588.  *See also Purdue*, 928 F.3d at 669.  UC claims that the hearing panel decision reconciled Roe's testimony and statements that she was not drunk with its conclusion that she was incapacitated due to alcohol consumption.  Appellee Br. at 40-41.  Not so.  The panel never mentioned, much less attempted to reconcile, Roe's repeated statements that she was not drunk.  (*Compare* Decision, R.29-2; PageID#588-601 and Appellant's Br. at 31 (collecting statements).) UC does not address why the hearing panel failed to explain how it determined that Roe's description of her mental and physical condition was ultimately credible but not find credible (much less explore or attempt to explain) her multiple assertions that she was not intoxicated.

### d.      The Multiple Procedural Errors Permit An Inference Of Bias And Created A Fundamentally Unfair Process

UC's claim that a TNG employee who had been removed from the panel, Brett Sokolow, "took no part in the decision," is supported only by self-serving statements from one of Sokolow's employees.  Appellee Br. at 42.  UC does not contest that Sokolow edited, provided substantive comments on, and ultimately "approved" the

---

[17] UC suggests that this argument was not presented below.  Not so.  Allegations of bias were part of the initial briefing on this matter.

decision prepared by the hearing panel. (*See e.g.* Draft, R.29-8, PageID#614-624; Draft, R.29-9, PageID#625-632.) Recusal means recusal. The fact that Sokolow played *any* role in the process is a procedural error.

UC does not contest that the hearing panel commented negatively on Noakes' decision to not provide a statement. UC does not defend that this was a procedural error which can lead to an inference of bias; UC merely suggests that Noakes was found to be not credible for other reasons. Appellee Br. at 43-44. In considering the cutting off of questions, UC asserts that Noakes is claiming he is entitled to "unlimited" cross-examination. Appellee Br. at 44. Noakes makes no such claim. Instead, Noakes is claiming that a procedural error occurred when the chair cut off good faith questions from Noakes' advisor simply because Noakes had not provided this information previously to the investigator. Finally, UC claims it complied with the appropriate timelines. This is addressed *supra.*

**e.    The Consultants Used On The Hearing And Appeals Panels Were Biased**

Noakes relies on his original briefing, with one observation about the deference due to university disciplinary panels. A university disciplinary committee is entitled to a presumption of honesty and integrity because educators often act as *loco parentis* – a role in which the safety, wellbeing, and intellectual cultivation of students takes on primary importance. Educators, unlike consultants, are concerned with not just conduct, but students' emotional wellbeing and ability to succeed in the classroom.

None of the *loco parentis* roles are played by employees of organizations that provide training, expert advice, and legal representation to educational institutions.

## C.    Noakes Will Suffer Irreparable Harm In The Absence Of Injunctive Relief

UC makes no effort to distinguish this Court's holding in *Univ. of Cincinnati* that discipline constitutes irreparable harm because of the risk of damage to a student's academic and professional reputations and constitutional rights.  *Univ. of Cincinnati,* 872 F.3d at 407.  UC, instead, suggests that the irreparable harm claimed by Noakes is "purely speculative."  Appellee Br. at 53.  This Court rejected an almost identical argument in *Univ. of Cincinnati,* finding that the characterization of a student's injury from school discipline "as 'speculative or unsubstantiated' does not rebut" the presumption of irreparable harm "'[w]hen constitutional rights are threatened or impaired...'" 872 F.3d at 407, *quoting Obama for Am. v. Husted,* 697 F.3d 423, 436 (6th Cir. 2012).[18]

---

[18] UC suggests Noakes has been able to enroll in another school and has not, yet, applied to graduate school.  Appellee Br. at 53.  However, this ignores the fact that Noakes "will forever have this disciplinary action on his academic record, which may impact his ability to enroll at another institution, or affect his future career possibilities." *Marshall v. Ohio Univ.*, S.D.Ohio No. 2:15-cv-775, 2015 U.S. Dist. LEXIS 31272, at *24-25 (Mar. 13, 2015).  *See also Doe v. Siena College,* N.D.N.Y. No. 1:22-cv-1115, 2023 U.S. Dist. LEXIS 7325, at *42 (Jan. 17, 2023) (finding irreparable harm where student "would also have a notation on his transcript which would hinder his prospects in pursuing other educational or employment opportunities"); *Williams v. Sonnentag,* D.Colo. Civil Action No. 1:21-cv-02757, 2021 U.S. Dist. LEXIS 216799, at *41-42 (Nov. 9, 2021) (describing efforts to minimize impact of disciplinary finding, including a notation on student transcript, as "callous, at best").

## D.   The Balance Of The Equities, Public Interest, And Minimal Harm To Third Parties Support The Issuance Of An Injunction

UC argues – without attempting to distinguish academic and disciplinary concerns[19] – that it is entitled to "a level of deference" in its "disciplinary decisions and processes" and that the public interest would not be served by "interfere[nce] with UC's ability to enforce its disciplinary standards."  Appellee Br. at 54.  UC cites only to *Univ. of Cincinnati* to support this assertion – a case where this Court ultimately affirmed the issuance of an almost identical preliminary injunction.  872 F.3d at 40.

UC fails to acknowledge that the school and the public have a complimentary interest in securing accurate, fair, and reliable resolutions.  *Goss*, 419 U.S. at 579 ("it disserves… the interest of the State if [a] suspension is in fact unwarranted").  *See also Winnick v. Manning*, 460 F.2d 545, 548 (2d Cir. 1972) (there "is no reason to believe that [school administrators'] interest in doing justice to accused students is not every bit as strong as [their] interest in maintaining order").

---

[19] See *Dixon v. Regents of the Univ. of New Mexico*, D.N.M. No. CV 98-725 SC/DJS, 1999 U.S. Dist. LEXIS 25356, at *17 (July 23, 1999) ("the disciplinary dismissal standard is less deferential to school authorities than the academic dismissal standard"), *citing Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 89 (1978) (contrasting academic evaluations of a student and disciplinary determinations).

**E.      Nominal Bond Should Be Required**

UC cites no authority to support the argument that no bond should be required. Appellee Br. at 55.  As in *Univ. of Cincinnati,* because UC has produced no evidence of any monetary harm from a preliminary injunction, a nominal bond is appropriate here.

**CONCLUSION**

The Order Denying the Motion for Preliminary Injunction should be reversed. Because the four factors required to grant a preliminary injunction are apparent on the record, this Court should cause the preliminary injunction to issue with nominal bond required.

Respectfully submitted,

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)
ENGEL AND MARTIN, LLC
4660 Duke Drive, Suite 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g) and 6 Cir R. 32(a) I hereby certify that this document complies with the type-volume limitation. This document contains 6275 words, excluding the portions listed in 6 Cir. R. 32(b), as calculated by Microsoft Word.

/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)